Thomas D. Walk (#5555)
KIRTON McCONKIE PC
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84145
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

David B. Cupar (*pro hac vice*)
Matthew J. Cavanagh (*pro hac vice*)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474

*Attorneys for Cequent Performance Products, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Angela Budge et al., <br><br> Plaintiffs, <br><br> v. <br><br> Cequent Performance Products, Inc., <br><br> Defendant. | **CEQUENT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Civil No. 2:14-cv-00938-BCW <br><br> Honorable Dee Benson |

Defendant Cequent Performance Products, Inc. ("Cequent") moves for summary judgment against plaintiffs/counterclaim-defendants Diversi-Tech Corporation and Angela Budge (the "DT Plaintiffs").

Summary judgment on Cequent's counterclaims is appropriate because there is no genuine dispute that: (i) a settlement agreement requires the DT Plaintiffs to make an up-front payment of $60,000 to Cequent and make subsequent royalty payments of a $1.50 per lock sold by Diversi-Tech; (ii) Diversi-Tech sold locks before and after the settlement; and (iii) the DT

Plaintiffs have not paid the upfront payment or the royalties due under the agreement. Thus, the Court should enter summary judgment on Cequent's counterclaims (ECF # 6) as follows:

1.      On <u>Count One</u> (Breach of Contract against Diversi-Tech): (a) summary judgment of liability against Diversi-Tech; (b) an order that Diversi-Tech provide business records (or, if no records exist, the best evidence of sales), verified by affidavit, that completely account for the total quantity of locks sold between June 26, 2008, and June 26, 2009, and the total quantity sold since June 26, 2009; and (c) an order that the parties submit supplemental briefing and evidence on damages after Diversi-Tech complies with its accounting obligation.

2.      On <u>Count Two</u> (Breach of Guaranty Agreement against Angela Budge): (a) summary judgment of liability against Angela Budge; and (b) an order that the parties submit supplemental briefing and evidence on damages after Diversi-Tech complies with its accounting obligation as ordered by the Court.

3.      On <u>Count Three</u> (Indemnification against Diversi-Tech): (a) summary judgment of liability against Diversi-Tech; and (b) an order that the parties submit supplemental briefing and evidence on damages after Diversi-Tech complies with its accounting obligation as ordered by the Court.

The Court also should enter summary judgment in favor of Cequent on all six of the DT Plaintiffs' claims—all of which seek to avoid the DT Plaintiffs' contractual obligations to pay Cequent—because those claims are without factual and legal support.

Because there is no genuine issue of material fact, and Cequent is entitled to judgment as a matter of law, the Court should enter summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**Memorandum in Support**

## I.    Introduction

The DT Plaintiffs have sued to try and escape their written promise to pay money owed to Cequent as part of a prior settlement. Because their claims fail as a matter of law for multiple reasons, the Court should order the DT Plaintiffs to pay their debt.

To settle a patent lawsuit in New York over Cequent's U.S. Patent No. 6,722,686 (the "'686 patent"), the DT Plaintiffs agreed to pay Cequent $60,000, and $1.50 per unit fee for each infringing product that the DT Plaintiffs continued to sell after the settlement. The DT Plaintiffs, however, paid only a portion of the $60,000 and paid none of the $1.50 per unit going-forward fees, despite their continued sale of the products that infringe Cequent's patent. When Cequent asked the DT Plaintiffs to pay their debt and stop selling the products, they sued.

Here is the defective theory on which the DT Plaintiffs base their suit. In a recent patent lawsuit in Colorado between Cequent and Wyers Products Group, Inc. ("Wyers"), Wyers asserted that Cequent's '686 patent is invalid. The DT Plaintiffs allege that Wyers' invalidity defense was not known to the DT Plaintiffs at the time they settled with Cequent and that, had they known about it, they would not have settled.

There are at least four separate and independent legal grounds for dismissing that theory.

First, in direct contradiction to what their pleading says, the DT Plaintiffs knew about Wyers' potential invalidity defense before settling with Cequent because they actually asserted that very defense <u>on the record</u> in the New York case before settling. Because they base all of their claims on an alleged lack-of-knowledge, the undisputed record from the New York action defeats all of their claims.

Second, in the settlement agreement, the DT Plaintiffs released Cequent from any invalidity defense. The contract itself, therefore, bars the DT Plaintiffs from suing Cequent to get out of the contract based on a claim of patent invalidity.

Third, in the New York case, the DT Plaintiffs asserted a counterclaim for patent invalidity against Cequent's '686 patent and stipulated to a "with prejudice" dismissal of that invalidity counterclaim. Consequently, res judicata bars the DT Plaintiffs from reasserting patent invalidity against the '686 patent.

Fourth, the Colorado District Court in the Wyers case granted summary judgment to Cequent on the invalidity defense that plaintiffs have conditioned this lawsuit upon. And then, on June 8, 2015, the Court dismissed the Wyers case with prejudice. Therefore, the possibility of the '686 patent being invalidated in the Wyers' case—the contingency on which plaintiffs base their case—is gone, so that plaintiffs' claims cannot survive.

## II.   **Background Facts**

As permitted by DUCivR 56-1, Cequent provides the following background section for its motion.

### A.   **The New York Action**

1. On January 21, 2005, Cequent's predecessor, Cequent Trailer Products, Inc. sued Diversi-Tech Corporation in the United States District Court of the Northern District of New York for infringing the '686 patent. (NY Compl., att'd as Ex. C-1.)[1]

2. The case was entitled *Cequent Trailer Products, Inc. v. Diversi-Tech Corp.*, Case No. 5:05-cv-00074-NAM-GJD (the "NY Action").

---

[1] True and accurate copies of all cited exhibits are attached to and submitted with the Declarations of Matthew J. Cavanagh, Esq. (designated as C-x) and David Rice (designated as V-x), which are being filed concurrently herewith.

3.      The '686 patent, which is attached as Ex. C-2, is directed to a universal coupler lock that locks out the socket of various sizes of trailer couplers to prevent thieves from attaching their hitch to an unattended trailer and towing it away:



Locking bar

Trailer Coupler

Lock's base

'686 Patent, Fig. 3

4.      In the NY Action, Cequent[2] alleged that Diversi-Tech's sale of its Maximum Security Coupler Lock, Part No. DT-25013, (the "Accused Lock") infringed the '686 patent. (Compl. ¶ 9, attached to Notice of Removal, ECF # 2.)

5.      Diversi-Tech counterclaimed against Cequent in the NY Action and sought, among other things, a declaration that the '686 patent is invalid under 35 U.S.C. §§ 102 and 103. (NY Countercl. ¶¶ 27, 28, att'd as Ex. C-3.)

6.      On January 18, 2008, Diversi-Tech moved to stay the NY Action based on its stated intent to file a request for reexamination of the '686 patent with the USPTO. (NY Mot. for

---

[2] For ease of reading, "Cequent" will refer to Cequent Trailer Products, Inc., Cequent Performance Products, Inc. or both, as indicated by context.

Stay and Memo. in Supp., att'd as Ex. C-4.) Diversi-Tech attached a draft of a request for reexamination to its motion.

7.      In the draft request, Diversi-Tech asserted that U.S. Patent No. 7,121,121 to Wyers (the "'121 patent") anticipates and invalidates the '686 patent. (Draft Request for Inter Partes Reexamination at 3, att'd as Ex. C-5 ("Claim 1 is anticipated under § 102(e) by Wyers").)

### B.      Settlement and Dismissal of the New York Action

8.      Cequent and Diversi-Tech settled the NY Action by signing a June 26, 2008, settlement agreement (the "Agreement"). (Agreement, att'd as Ex. C-11.)

9.      The Agreement obligated Diversi-Tech to: (a) pay $60,000 to Cequent by June 26, 2009 (Agreement § 1.1); (b) pay Cequent a royalty of $1.50 for each coupler lock that it sold in excess of 30,000 units between June 26, 2008, and June 26, 2009 (*id.* § 1.2); (c) pay Cequent a royalty of $1.50 for each coupler lock that it sold or sells after June 26, 2009, on a biannual basis (*id.* § 1.3); and (d) provide Cequent with "an accurate accounting of the number of coupler lock units sold during the previously accounting half-year" on June 1 and December 1 of each year (*id.* § 1.4).

10.      As required by Section 1.1 of the Agreement, Diversi-Tech's President Angela Budge executed a personal guaranty in which she "represents and warrants that she has and will continue to have assets without any liens or encumbrances of at least sixty-thousand dollars ($60,000) in her name until payment of said sum to Cequent, and guarantees to Cequent the payment of any sums due if Diversi-Tech defaults in payment of the sixty-thousand dollars." (Guaranty, att'd as Exhibit B to Agreement.)

11.      In the Agreement, Diversi-Tech released Cequent from all invalidity claims against the '686 patent by agreeing to "release, acquit, discharge and dismiss . . . all claims . . .

asserted in the Litigation and those that remain unasserted but which could have been asserted including but not limited to invalidity or seeking reexamination." (Agreement § 2.2.)

12.     Diversi-Tech further agreed to indemnify and hold Cequent harmless against any claims or other matters released within the Agreement. (Agreement § 3.1.)

13.     As required by Section 1.8 of the Agreement, Diversi-Tech and Cequent filed a stipulated dismissal with prejudice of the entire NY Action. (NY Dismissal, att'd as Ex. C-5.)

14.     In 2008, Cequent Trailer Products, Inc. merged into "Cequent Towing Products, Inc." and that surviving entity changed its name to "Cequent Performance Products, Inc." – the defendant and counterclaimant in this action. (Rice Decl. ¶ 8.)

C.     **Diversi-Tech and Ms. Budge Breach Their Contractual Obligations**

15.     To date, Diversi-Tech has paid Cequent only $28,000 of the $60,000 payment due by June 26, 2009. (Rice Decl. ¶ 9).

16.     Diversi-Tech has continued to sell the Accused Lock from the June 26, 2009, settlement date until at least 2013. (Cavanagh Decl. ¶ 21.)

17.     Despite its sale of Accused Locks, Diversi-Tech has never provided any accounting or royalty payments to Cequent. (Rice Decl. ¶ 9.)

18.     To date, Ms. Budge has not paid any of the money that Diversi-Tech owes to Cequent, despite her personal guaranty obligating her to do so. (Rice Decl. ¶ 9.)

19.     On May 7, 2014, Cequent sent letters to Diversi-Tech, Angela Budge, and Angela's husband and Diversi-Tech co-owner Paul Budge, identifying their contractual breaches and demanding that they remedy the breaches by May 23, 2014. (Cavanagh Decl. ¶ 15.) True and accurate copies of those letters are attached as Ex. C-7.

20.     Neither Diversi-Tech nor the Budges responded to Cequent's letters or paid the amounts owed. (Cavanagh Decl. ¶ 16; Rice Decl. ¶ 11.)

**C.      Diversi-Tech and Ms. Budge Sue Cequent in Utah**

21.     On November 26, 2104, Diversi-Tech and Ms. Budge initiated this action by suing Cequent in Utah state court. (*See* Compl.)

22.     The DT Plaintiffs allege that, in a "Second Lawsuit" between Cequent and Wyers in Colorado federal court, "facts have been exposed that illustrate that Defendant Cequent's Patent may be invalid, primarily, due to a filing error within the US Patent and Trademark Office whereby the Wyer Product Group Inc.'s initial provisional patent application predated Cequent's application for the 686 Patent." (Compl. ¶ 14.)

23.     The Wyers' "provisional patent application" identified in Paragraph 14 of the DT Plaintiffs' complaint issued as the '121 patent. (Cavanagh Decl. ¶ 20; *see also* '686 patent, Ex. C-2.)

24.     The DT Plaintiffs allege that the "686 Patent is not owned by Cequent or alternatively that the 686 Patent was invalid from its inception." (Compl. ¶ 15.)

25.     The gist of each of the DT Plaintiffs' legal claims is that the Agreement should be rescinded because Cequent is allegedly "not the owner of the 686 Patent" (i.e., the patent is invalid) (Compl. ¶ 20) and either: (a) Cequent fraudulently concealed that fact from the DT Plaintiffs (*id.*); or (b) Cequent and the DT Plaintiffs were unaware of, and therefore mutually mistaken in believing, "that Cequent was the valid owner of the Patent" (*id.* ¶ 22).

26.     The DT Plaintiffs' complaint repeatedly request that the settlement be "reformed to provide a contingency for the outcome of the Second Lawsuit to establish Defendant's ownership in the Patent." (*E.g.*, Compl. ¶ 21, 24.)

27.     On January 12, 2015, Cequent's counsel wrote to counsel for the DT Plaintiffs, explained that its complaint was frivolous because, among other things, the plaintiffs could not claim that Cequent had fraudulently concealed an invalidity defense that Diversi-Tech itself had identified and raised on the record in the NY Action before signing the Agreement, and urged the plaintiffs to withdraw their complaint. (Cavanagh Decl. ¶ 19 and Ex. C-8.)

28.     The DT Plaintiffs refused to withdraw their baseless complaint. (Cavanagh Decl. ¶ 19.)

29.     On March 31, 2015, in the Colorado case that the DT Plaintiffs refer to as the "Second Lawsuit," the United States District Court for the District of Colorado denied Wyers' motion for summary judgment on invalidity and granted summary judgment to Cequent, ruling that the '121 patent does not invalidate the '686 patent under 35 U.S.C. § 102(e) or § 291. (Order, att'd as Ex. C-9.)

30.     The Colorado court rejected, as a matter of law, the invalidity grounds that the DT Plaintiffs allege as the basis of their lawsuit.

31.     On June 4, 2015, Cequent and Wyers settled the Colorado case, and they filed a stipulated dismissal with prejudice on June 5, 2015. (Cavanagh Decl. ¶ 23; Ex. C-10.)

## III.     Statement of Elements and Undisputed Material Facts

As required by DUCivR 56-1(b)(2), Cequent provides the following statement of elements and undisputed material facts.

Cequent's Counterclaim, Count One – Breach of Contract

Legal elements needed to prevail on breach of contract:

(1)     Existence of a contract. *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

<u>Undisputed Material Fact</u>: Angela Budge signed the Settlement Agreement on behalf of Diversi-Tech. (Agreement at p.5, Ex. C-11.)

(2)     Breach of the contract. *Miller-Davis*, 848 N.W.2d at 104.

<u>Undisputed Material Facts</u>: Diversi-Tech has breached the Agreement by not: (a) paying the $60,000 up-front payment; (b) paying the $1.50 per unit royalties; and (c) providing the bi-annual accounting reports, all of which are required by the Agreement. (Background Facts ¶¶ 15-18.)

(3)     Damages caused by the breach. *Miller-Davis*, 848 N.W.2d at 104.

<u>Undisputed Material Fact</u>: Cequent has not received money that it is owed and, therefore, has been damaged by Diversi-Tech's breaches. (Background Facts ¶¶ 15-20.)

<u>Cequent's Counterclaim, Count Two – Breach of Guaranty Agreement</u>

Legal elements needed to prevail on breach of guaranty:

(1)     Existence of a guaranty promise. *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

<u>Undisputed Material Fact</u>: Angela Budge signed the Guaranty. (*See* Guaranty, which is Exhibit B to Agreement, Ex. C-11.) The Guaranty obligation was triggered when Diversi-Tech defaulted in its obligation to pay the $60,000 up-front payment. (*Id.* ("Guarantor . . . guarantees to Cequent the payment of any sums due if Diversi-Tech defaults in payment of the sixty-thousand dollars as set forth in the Settlement Agreement and in accordance with its terms.").)

(2)     Breach of the guaranty promise. *Miller-Davis*, 848 N.W.2d at 104.

<u>Undisputed Material Facts</u>: Ms. Budge has breached the Guaranty by not paying the "sums due" to Cequent. (Background Fact ¶ 18.)

(3)     Damages caused by the breach. *Miller-Davis*, 848 N.W.2d at 104.

<u>Undisputed Material Fact</u>: Cequent has been damaged by Ms. Budge's breach because it not received money that she owes Cequent. (Background Facts ¶¶ 15-20.)

<u>Cequent's Counterclaim, Count Three – Breach of Indemnification Obligation</u>

Legal elements needed to prevail on breach of indemnification obligation:

(1)     Existence of indemnification obligation. *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

<u>Undisputed Material Fact</u>: Diversi-Tech promised to indemnify Cequent under Section 3.1 of the Agreement. (Agreement § 3.1, Ex. C-11.) Diversi-Tech's indemnification obligation triggered when the DT Plaintiffs sued and asserted invalidity of the '686 patent against Cequent. (*Id.* §§ 3.1, 2.2 (Diversi-Tech "shall indemnify and hold harmless [Cequent] from . . . any claims or other matters released herein," where Diversi-Tech released, in Section 2.2, Cequent from claims of "invalidity").)

(2)     Breach of the indemnification obligation. *Miller-Davis*, 848 N.W.2d at 104.

<u>Undisputed Material Facts</u>: Diversi-Tech has breached the Agreement by not indemnifying and holding Cequent harmless against this lawsuit. (Background Facts ¶¶ 19-20.)

(3)     Damages caused by the breach. *Miller-Davis*, 848 N.W.2d at 104.

Undisputed Material Fact: Cequent has been harmed by Diversi-Tech's failure to indemnify because Cequent has been harmed by this lawsuit by having to spend fees (including attorneys' fees) and costs to defend itself against claims that Diversi-Tech had released.

Cequent's Second Affirmative Defense – Res Judicata (Answer ¶ 43, ECF # 6)

Legal elements needed to prevail on affirmative defense of res judicata:

(1)    Final judgment on the merits of a prior action. *Monahan v. NYC Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).

Undisputed Material Facts: NY Action was dismissed with prejudice. (Background Fact ¶ 13, Ex. C-5.)

(2)    Prior action involved the plaintiffs or those in privity with them. *Monahan*, 214 F.3d at 285.

Undisputed Material Fact: Diversi-Tech was a defendant and counterclaim-plaintiff in the NY Action. Angela Budge is in privity with Diversi-Tech because she is Diversi-Tech's President, is treated in the complaint as one with Diversi-Tech (*see, e.g.,* Compl. ¶ 4), and she signed the settlement agreement on Diversi-Tech's behalf. (Compl. ¶ 1; Background Facts ¶ 10; Agreement and Guaranty, Ex. C-11.)

(3)    The claims asserted in this action were, or could have been, raised in the prior action. *Monahan*, 214 F.3d at 285.

Undisputed Material Fact: Diversi-Tech asserted a counterclaim for invalidity in the NY Action. (Background Facts ¶¶ 5, 7.) Here, Diversi-Tech is attempting to raise the same invalidity claim that it raised in the NY Action. (*See generally* Complaint.)

<u>Cequent's Third Affirmative Defense – Release (Answer ¶ 44.)</u>

Legal element needed to prevail on affirmative defense of release:

(1)    Action is within scope of contractual release. *Burdick v. Horner Townsend & Kent, Inc.*, 345 P.3d 531, 547-48 (Utah 2015).

<u>Undisputed Material Fact</u>: The Agreement's release provision releases Cequent from all claims that Diversi-Tech asserted or could have asserted in NY Action, including invalidity claim against the '686 patent. (Agreement § 2.2, Ex. C-11.) All six of DT Plaintiffs' claims challenge the validity of the '686 patent. (*See generally* Complaint.)

<u>DT Plaintiffs' Failure to Present a *Prima Facie* Case</u>

Legal elements needed to prevail:

(1)    That the DT Plaintiffs cannot "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

<u>Undisputed Material Facts</u>: (a) All six of DT Plaintiffs' claims include, as an essential element, an allegation that the DT Plaintiffs did not know about the invalidity defense Wyers asserted against the '686 patent and that the Agreement should be rescinded if Wyers invalidates the '686 patent (*see generally* Complaint); (b) because Diversi-Tech asserted, on the record in the NY Action, the same invalidity defense that Wyers asserted against the '686 patent, Diversi-Tech cannot prove that it did not know about that potential defense when it executed the Agreement (Background Facts ¶¶ 5, 7); and (c) because Wyers failed to

invalidate the '686 patent, the contingency on which the DT Plaintiffs' base all six of their claims did not occur. (Background Facts ¶¶ 29-31.)

IV.   <u>Law and Argument</u>

    A.   <u>Summary Judgment Standard</u>

Under Rule 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if its resolution might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, summary judgment is appropriate when a reasonable jury could only decide in favor of the moving party based on all of the evidence presented. *Id.*; *see Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

    B.   <u>The Court Should Enter Summary Judgment on Cequent's</u>
       <u>Breach of Contract Claim (Count One) Against Diversi-Tech</u>

Under Michigan law, which the Agreement's choice-of-law provision requires, plaintiff "must establish by a preponderance of evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

There is no genuine dispute that:

●   The Agreement is a binding contract between Cequent and Diversi-Tech (Background Facts ¶ 8; Agreement, Ex. C-11).

●   Diversi-Tech breached the Agreement by: (i) not paying the remaining $32,000 owed on the $60,000 up-front payment; (ii) not paying any of the $1.50 per unit royalties due under the Agreement; and (iii) not providing any of the bi-annual accountings due to Cequent. (Background Facts ¶¶ 15-20.)

●   Diversi-Tech's breaches caused damages to Cequent because Cequent has not received money due to it under the Agreement.

Therefore, the Court should enter summary judgment of liability in Cequent's favor and against Diversi-Tech on Cequent's breach of contract claim (Count One). To calculate damages, the Court should order Diversi-Tech to provide an accounting of the quantity of Accused Locks sold between June 26, 2008, and June 26, 2009, and the quantity sold since June 26, 2009, and then allow supplemental briefing on the total damages owed to Cequent under Count One.

### C. The Court Should Enter Summary Judgment on Cequent's Breach of Guaranty Claim (Count Two) Against Ms. Budge

Under the Guaranty, Ms. Budge "guarantees to Cequent the payment of any sums due if Diversi-Tech defaults in payment of the sixty-thousand dollars." (Guaranty, att'd as Exhbit B to Agreement, Ex. C-11.) There is no genuine dispute that Diversi-Tech defaulted "in payment of the sixty-thousand dollars." (Background Facts ¶ 15.) Thus, the Guaranty obligates Ms. Budge to pay Cequent "any sums due." And there is no dispute that Ms. Budge has not paid Cequent any of the sums that are due and owed by Diversi-Tech. (*Id.* ¶ 18.)

Therefore, the Court should enter summary judgment of liability in Cequent's favor and against Angela Budge on Cequent's breach of guaranty claim (Count Two). As Ms. Budge is liable for "any sums" due, she is jointly liable with Diversi-Tech for all sums due to Cequent. Consequently, the Court should determine Cequent's damages against Ms. Budge based on the supplemental briefing Cequent requests above with respect to Count One and below with respect to Count Three.

### D. The Court Should Enter Summary Judgment on Cequent's Indemnification Claim (Count Three) Against Diversi-Tech

The Agreement contractually obligates Diversi-Tech, as the "releasing party," to "indemnify and hold harmless the other party [Cequent] from . . . any claims or other matters released herein." (Agreement § 3.1.)

The "matters released herein" by the Agreement include: (a) any "claims . . . asserted in the Litigation . . . including but not limited to invalidity." (Agreement § 2.2.)

Because this lawsuit asserts invalidity against Cequent, which is one of the "matters released," Diversi-Tech must "indemnify and hold [Cequent] harmless" against the lawsuit.

The Court should enter summary judgment of liability in Cequent's favor and against Diversi-Tech on Cequent's indemnification claim (Count Three), and allow supplemental briefing on the total amount of harm (including attorneys' fees) that the DT Plaintiffs' lawsuit has caused Cequent, which the DT Plaintiffs must repay to Cequent as part of their indemnification and guaranty obligations.

### E.    The Court Should Grant Summary Judgment to Cequent on All of the DT Plaintiffs' Claims (Counts One to Six)

All six of the DT Plaintiffs' claims seek rescission of the Agreement based on the allegation that Cequent is not the "owner" of the '686 patent. The DT Plaintiffs equate invalidity with lack of ownership, so their legal claims are all actually based entirely on their allegation that the '686 patent is invalidated by the '121 patent.[3]

#### 1.    Count One

Count One is titled "Known Mistake of Fact by Defendant" and seeks rescission of the Agreement based on the allegation that the "Settlement was based on the mistaken fact that Cequent was the owner of the 686 Patent." (Compl. ¶ 20.)

That claim fails as a matter of law for four separate and independent reasons.

First, it is undisputed that Diversi-Tech asserted in the NY Action, before it signed the Agreement, that the '121 patent invalidated the '686 patent. (Background Facts ¶¶ 5-7.) Therefore, Diversi-Tech cannot prove (and no reasonable jury could believe) that it was

---

[3] If Diversi-Tech is actually basing its claims on an alleged lack of ownership, the claims would all fail because there is no genuine dispute that Cequent owns the '686 patent. (Background Facts ¶ 14.)

unaware of, or "mistaken" about, the existence of that potential defense, which is an essential element of its claim.

Second, in the Agreement, Diversi-Tech released Cequent from any claims "asserted in the Litigation and those that remain unasserted but which could have been asserted . . . ***including but not limited to invalidity***." (Agreement § 2.2 (emphasis added).) This release legally forecloses Diversi-Tech from challenging the Agreement based on a claim that the '686 patent is invalid. That is especially true here because Diversi-Tech actually asserted in the NY Action that the '121 patent invalidated the '686 patent, which is the same purported defense that forms the basis for all of Diversi-Tech's claims. (Background Facts ¶ 7.) Because Diversi-Tech agreed to release its invalidity defenses in the Agreement to obtain a dismissal of the NY Action, it cannot now reassert that released invalidity defense after dismissal as the basis for its refusal to comply with its payment obligations. The contractual release bars Diversi-Tech from proceeding with this claim.

Third, res judicata bars this claim. Based on the "with prejudice" dismissal of the NY Action, res judicata bars all claims and defenses that Diversi-Tech made or could have made in the case. *St. Pierre v. Dyer*, 208 F.3d 394, 399-400 (2d Cir. 2000) ("Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"). Diversi-Tech asserted patent invalidity in its counterclaim, and specifically asserted that the '121 patent invalidates the '686 patent. (Background Facts ¶¶ 5-7.) The New York court's dismissal with prejudice of Diversi-Tech's counterclaim bars it from again asserting invalidity of the '686 patent against Cequent. (Background Facts ¶ 13.) That is especially true here, where

Diversi-Tech is trying to reassert the very same invalidity defense that it asserted—and agreed to dismiss with prejudice—in the NY Action.

Fourth, the Colorado court has ruled in Cequent's favor on the invalidity defense that the DT Plaintiffs hinge their mistake-of-fact claim (Count One) upon. (Background Facts ¶¶ 29-30.) That the DT Plaintiffs hinged their claim on that court decision is confirmed by their request that the Settlement be "reformed to provide a contingency for the outcome of the Second Lawsuit." (Compl. ¶ 21.) Because the Colorado court rejected Wyers' invalidity defenses based on the '121 patent, the DT Plaintiffs' Count One must fail as a matter of law.

The Court should enter summary judgment in favor of Cequent on Count One for any or all of those reasons.

> ### 2. *Count Two*

Count Two is titled "Mutual Mistake" and alleges that the "Settlement Agreement was based on the material and mistaken fact of both Parties that Cequent was the valid owner of the Patent." (Compl. ¶ 22.) That claim fails as a matter of law for any of the same four reasons that Count One fails: (i) the undisputed record in the NY Action proves that Diversi-Tech knew about the potential invalidity defense that it alleges it mistakenly did not know about; (ii) the Agreement releases Cequent from the invalidity defense that Diversi-Tech bases this claim upon; (iii) the res judicata effect of the dismissal of the NY Action bars Diversi-Tech from again suing Cequent for invalidity of the '686 patent; and (iv) the Colorado court ruled in favor of Cequent on the invalidity defense that the DT Plaintiffs say they didn't know about.

The Court should enter summary judgment in favor of Cequent on Count Two for any or all of those reasons.

3.      *Count Three*

Count Three is titled "Settlement Agreement Based on Fraud." It seeks damages under a fraudulent inducement theory premised on an allegation that Cequent "withheld information from Plaintiff that was known only by Defendant as to the true ownership of the 686 Patent, as well as the existence of the Wyer Product Group, Inc.'s claim." (Compl. ¶ 27.)

This claim fails as a matter of law for the same four separate and independent reasons that Counts One and Two fail. The Court should enter summary judgment in favor of Cequent on Count Three for any or all of those reasons.

4.      *Count Four*

Count Four is titled "Breach of Covenant of Good Faith and Fair Dealing." It seeks damages based on an allegation that Cequent "breached its obligation of good faith and fair dealing" by intentionally concealing the Wyers' invalidity defense from the DT Plaintiffs. (Compl. ¶ 30.)

That claim must fail for the same four reasons that Counts One, Two, and Three fail. The Court should enter summary judgment in favor of Cequent on Count Four for any or all of those reasons.

5.      *Count Five*

Count Five is for "Unjust Enrichment" and seeks damages based on an allegation that "it would be inequitable for Defendant to retain the benefit those [settlement] payments made by Plaintiffs if/when in fact, Defendant does not own the 686 patent or if such Patent is invalid." (Compl. ¶ 35.)

That claim fails as a matter of law for the same four reasons that Counts One through Four fail. The Court should enter summary judgment in favor of Cequent on Count Five for any or all of those reasons.

      *6.*     *Count Six*

Count Six seeks a declaratory judgment that the Agreement is "rescinded" or, alternatively, that Cequent is not entitled to receive additional payments under the Agreement "until such time as the Second Lawsuit has reached its fruition and Defendant Cequent's ownership rights in the 686 Patent have been fully established." (Compl. ¶ 40 (emphasis added).)

This claim punctuates how the Colorado court's decision on Wyers' invalidity defense, and the subsequent dismissal with prejudice of that action, dispositively forecloses this entire action. The "Second Lawsuit has reached its fruition," for the case has been dismissed. (Background Facts ¶¶ 29-31.) And Cequent's "ownership" (as plaintiffs use that word) of the '686 patent has "been fully established" because the invalidity defense challenging Cequent's rights to that '686 patent have been fully and finally defeated. (*Id.*) Consequently, the Court should enter summary judgment for Cequent on Count Six.

The Court also should enter summary judgment for Cequent on Count Six on any of the other three grounds identified above with respect to the other Counts.

## V.    **Conclusion**

For the foregoing reasons, the Court should grant summary judgment to Cequent.

             Respectfully submitted,

Dated:  June 16, 2015             s/ Matthew J. Cavanagh_____
                                      *Counsel for*
                                      *Cequent Performance Products, Inc.*

<u>Certificate of Service</u>

I hereby certify that, on June 16, 2015, a copy of the foregoing *Motion for Summary Judgment and Cequent's Memorandum in Support of Motion for Summary Judgment* was electronically served using the Court's Electronic Case Filing (ECF) system and the parties have been served by electronic notice through the Court's ECF system.


   s/ Matthew J. Cavanagh
*One of the Attorneys for*
*Cequent Performance Products, Inc.*