Thomas D. Walk (#5555)
KIRTON McCONKIE PC
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84145
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

David B. Cupar (*pro hac vice*)
Matthew J. Cavanagh (*pro hac vice*)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474

*Attorneys for Cequent Performance Products, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Angela Budge et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Cequent Performance Products, Inc.,<br><br>Defendant. | **CEQUENT'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT**<br><br>Civil No. 2:14-cv-00938-BCW<br><br>Honorable Dee Benson |

**Introduction**

This should be a simple collection matter. Diversi-Tech admits that it owes Cequent around $100,000 under a settlement agreement that resolved, with finality, a prior patent infringement case in New York. Rather than pay what it owes, Diversi-Tech is paying lawyers to assert legal theories that are not supported by fact or law to try to negotiate a lower payment. Cequent asks the Court to end these inappropriate delay tactics.

{5648411:4}

Diversi-Tech first asked this Court to void the settlement of the New York lawsuit by alleging that Cequent fraudulently concealed a patent invalidity defense from Diversi-Tech and that, if Diversi-Tech had known about that defense, it would not have settled with Cequent. The fatal problem with that theory: Diversi-Tech knew about the invalidity defense that it falsely alleged was unknown because it identified that defense on the CM/ECF record in the New York case before settling. Cequent advised Diversi-Tech of this undeniable truth months ago, yet Diversi-Tech refused to withdraw its frivolous complaint, forcing Cequent to spend significant legal fees on a motion for summary judgment.

Faced with an unbeatable summary judgment motion, Diversi-Tech now wants permission to moot Cequent's motion so it may assert a completely new theory of fraud. This new theory, however, is just as frivolous as the first. According to Diversi-Tech, Cequent's attorney intentionally violated his ethical obligations, Rule 11, and the common law by lying to Diversi-Tech's Paul Budge before his deposition in 2005 to induce a favorable settlement in 2008. Although the alleged lawyer statement was not made, plaintiffs cannot sue on it, even if we assume that it was made, for at least the following reasons:

1. The law does not allow one to sue for fraudulent inducement of a settlement that results in a dismissal of an earlier lawsuit. A plaintiff must seek relief, if any, from the court that entered the dismissal.

2. The alleged statement—opposing counsel's opinion that Cequent's invention date was "well ahead" of any invention date that Budge could prove—is consistent with the 2001 invention date that Diversi-Tech alleges was misrepresented, such that the alleged statement cannot, as a matter of law, be construed as false.

3. The alleged statement is not a representation of fact, but rather an opinion about what the evidence would show and how the judge or jury would decide Diversi-Tech's prior inventorship defense.

4. Diversi-Tech cannot plausibly allege that Cequent's counsel believed his 2005 opinion was false or that he was reckless as to the accuracy of his

opinion because, in denying summary judgment to Diversi-Tech on invalidity, the New York court ruled in 2007 that there was a genuine issue of material fact of whether Budge could beat a May 2002 date. Based on the court's ruling, it is not plausible to allege that Cequent's counsel did not truly believe that Budge could not beat an even earlier April 2001 date.

5. Diversi-Tech cannot plausibly allege that it reasonably relied on the statement because it is not reasonable to rely on opposing counsel's prediction of how the ultimate issues will be decided, especially when Diversi-Tech had its own attorney, the alleged statement is vague, Cequent's attorney had an ethical obligation to zealously advocate for Cequent's position, Diversi-Tech had three years after counsel's alleged statement to learn Cequent's actual invention date on its own through discovery, and Diversi-Tech's settlement expressly disclaimed any reliance on statements by Cequent or its counsel.

For each of these reasons, the claims that Diversi-Tech seeks leave to assert are futile. The Court should deny leave to amend and require Diversi-Tech to respond to Cequent's summary judgment motion. If, however, the Court grants leave to amend, then it should condition that leave on Diversi-Tech reimbursing Cequent for the attorneys' fees it incurred in moving for summary judgment on the claims Diversi-Tech now wants leave to abandon.

**Background**

I.    **The New York Action**

In 2005, Cequent sued Diversi-Tech for patent infringement in the U.S. District Court for the Northern District of New York. Cequent alleged that Diversi-Tech's sales of a universal coupler lock infringed Cequent's U.S. Patent No. 6,722,686 ("the '686 patent").

Diversi-Tech moved for summary judgment of invalidity based on a claim of prior inventorship by Diversi-Tech's Paul Budge. Budge claimed that, by August 2000, he had invented the coupler lock claimed by the '686 patent. Budge's "corroborating witnesses," however, did not corroborate Budge's alleged August 2000 invention date. (*See Cequent Trailer Products, Inc. v. Diversi-Tech Corp.*, 5:05-cv-00074-NAM-GJD (N.D.N.Y. Sept. 20, 2007) (ECF # 73) ("SJ Order").)[1] Instead, their deposition testimony and other evidence showed that Budge invented his device on or after June 1, 2002—at least one month *after* the filing date for the '686 patent (and over a year after the Cequent invention date that Diversi-Tech seeks leave to allege).

Cequent opposed Diversi-Tech's motion by evidencing why Budge could not prove an invention date before the '686 patent's May 1, 2002, filing date. Because Budge could not beat the 2002 filing date, which is the '686 patent's presumed invention date, Cequent had no need to establish the earlier *actual* invention date by Cequent engineer Tim Vander Koy—the inventor on the '686 patent.

On September 30, 2007, the New York court denied summary judgment to Diversi-Tech. (SJ Order at 7.) It ruled that the evidence offered by Cequent raised "material questions of

---

[1] A true copy of the New York court's summary judgment ruling is attached as Exhibit A. This Court may consider that ruling in deciding Diversi-Tech's motion for leave to amend either as law or by taking judicial notice of that decision. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (court may take judicial notice of court records).

fact" on whether Diversi-Tech could prove by clear and convincing evidence that Budge invented what is claimed by the '686 patent before May 1, 2002. (*Id.* at 7.) The court cited the following evidence: (a) Budge's witnesses, James Rimer and Larry Musgrave, testified that Budge's prototype was marked with a "DT" trademark (for Diversi-Tech), and Diversi-Tech's federal trademark application identified June 1, 2002, as the date it first used that trademark; (b) the manufacturer of Diversi-Tech's prototype, Val Carpenter, disputed Budge's alleged 2000 invention date by testifying that he did not manufacture Budge's prototype until 2002; and (c) letters by Budge and his attorney confirmed that Budge had not reduced his alleged invention to practice until after Cequent's 2002 filing date. (*Id.* at 6-7.)

## II.     The Settlement

On June 26, 2008, Diversi-Tech and Cequent settled the New York action with a written settlement agreement (the "Settlement"). (*See* Prop'd Am. Compl. ¶ 7, ECF # 30-1.) Diversi-Tech agreed to pay Cequent $60,000 and a royalty of $1.50 per unit going forward. (*Id.*) And Diversi-Tech's President, Angela Budge, signed a personal guaranty of Diversi-Tech's payment obligations. (*See* Personal Guaranty, ECF # 24-13 at p. 10.) In return, Cequent agreed to dismiss the lawsuit with prejudice and release Diversi-Tech from liability. (Settlement § 1.8.) In the Settlement, each party agreed that it had not relied on any statement, representation, or inducement by the other. It stated:

> [T]his agreement is made without reliance upon any statement or representation of another party or any other person or entity, and further declare and represent that no promise, inducement, or agreement not herein expressed has been made by or to them.

(Settlement, 5th Whereas Clause.)

Diversi-Tech admits that it owes $32,000 of the $60,000 lump sum payment and has not paid any of the $1.50 per unit royalty payments, despite continuing to sell the infringing coupler

lock. (Prop'd Am. Compl. ¶ 13.) On May 7, 2014, Cequent's counsel wrote to Diversi-Tech and Ms. Budge and asked that they pay their debts. (*Id.* ¶ 15.)

In 2013, Diversi-Tech was sold to another Utah company, Progress Mfg. Ironically, while Diversi-Tech falsely accuses Cequent of fraud here, Progress accuses Diversi-Tech of fraudulently concealing the Settlement (and its $1.50/unit royalty obligation) from Progress, despite representing in the purchase agreement that no such settlement existed.

### III. This Action

Rather than pay Cequent what it owes, Diversi-Tech is paying lawyers to construct legal theories to try and void the Settlement. They have directed their bogus theories at a Colorado patent lawsuit between Cequent and Wyers Products Group, Inc. First, Diversi-Tech alleged that: (a) it was not aware of an invalidity defense that Wyers asserted in that case; (b) Cequent knew about the invalidity defense, but fraudulently concealed it from Diversi-Tech; and (c) Diversi-Tech would not have agreed to the Settlement had it known about the defense. A Diversi-Tech filing in the New York action, however, flatly contradicted Diversi-Tech's allegations. Not only did Diversi-Tech know about Wyers' invalidity defense (which was based on Wyers '121 patent), it had identified that very defense on the record in the New York action before settling the case. (*See generally* Cequent's S.J. Mot., ECF #24.)

In January 2015, Cequent's counsel notified Diversi-Tech's counsel of this fact and asked it to withdraw its false pleading. (Letter to J. Park, ECF # 24-10.) When Diversi-Tech refused to do so, Cequent moved for summary judgment in June against all of Diversi-Tech's claims on four separate grounds:

1. The undisputed record in the New York action dispositively proved that Diversi-Tech knew about the very invalidity defense that each of its claims alleged that it did not know about.

2. In the Settlement, Diversi-Tech released Cequent from any and invalidity defenses against the '686 patent.

3. Because Diversi-Tech agreed to dismiss its invalidity counterclaim with prejudice in the New York action, res judicata bars it from reasserting patent invalidity against the '686 patent.

4. The Colorado federal court granted summary judgment to Cequent on the invalidity defense that plaintiffs conditioned their lawsuit upon.

Diversi-Tech seeks leave to abandon this unworkable fraud theory to assert a new, and equally unworkable, one. Now Diversi-Tech says it only settled because, before Budge's deposition on August 11, 2005,[2] Cequent's attorney allegedly predicted that Budge would not be able to prove an invention date before Cequent's invention date. As explained below, that alleged statement (assuming it was made) is neither fraudulent nor actionable and, therefore, the Court should deny Diversi-Tech leave to assert its proposed futile claims.

## Law and Argument

I. **The Court should deny Diversi-Tech leave to amend because the claims it seeks to assert are futile for several reasons.**

    A.     **A plaintiff may not amend its pleading to assert futile claims.**

Courts will not grant leave to file an amended complaint that is futile. *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.*, quoting *Bradley v. J.E. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

---

[2] The deposition transcript of Paul Budge was filed in the New York action and shows the deposition occurred on August 11, 2005. (Budge Dep. Tr. at 1, *Cequent Trailer Products, Inc. v. Diversi-Tech Corp.*, 5:05-cv-00074-NAM-GJD (N.D.N.Y. Sept. 9, 2005), ECF No. 47-2.)

**B. Diversi-Tech's proposed amendments are futile because one may not sue for fraudulent inducement of a settlement that results in a final judgment.**

**1. Diversi-Tech may not sue for fraudulent inducement of a settlement under Michigan law.**

Diversi-Tech's amended claims are futile because Michigan law, which the parties agreed to apply, bars one from suing over an alleged fraudulently induced settlement.

In the Settlement, the parties agreed that "This Agreement is and shall be governed by the laws of the State of Michigan." (Settlement § 4.3.) That choice-of-law provision applies Michigan law to Diversi-Tech's fraudulent inducement claim because Michigan is Cequent's home state, and thus has a substantial relation to the transaction, and Diversi-Tech does not allege that the choice-of-law provision itself resulted from fraud. *See* Restatement (Second) of Conflicts § 201 (1971) (contract's choice-of-law provision generally applies to claim for fraudulent inducement of contract); *see also S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1027-30 (D. Ariz. 2001) (applying contract's choice-of-law provision to fraudulent inducement claim).

Under Michigan law, a plaintiff may not sue for fraudulent inducement of a settlement agreement that caused a final dismissal of past litigation. *Triplett v. St. Amour*, 507 N.W.2d 194, 197 (Mich. 1993). An allegedly aggrieved party's sole remedy is to move to vacate the past judgment under Fed. R. Civ. P. 60(b) or its equivalent. *Id*. This law makes good sense to preserve the finality of judgments, to promote settlement, and to avoid the unfairness of allowing a party to void its payment obligations without risking exposure to the original lawsuit that was settled and dismissed as consideration for the settlement payments.

Allowing Diversi-Tech to amend its complaint to assert a new fraudulent inducement claim, therefore, would be futile.

## 2. Diversi-Tech also may not sue for fraudulent inducement of a settlement under Utah law.

If there were no choice-of-law provision in the Settlement and Utah law applied, Diversi-Tech still could not state a viable claim for fraudulent inducement. That is because, under Utah law, a plaintiff may not void an agreement as fraudulently induced unless "it is possible to return the parties to the status quo that existed before the agreement was formed." *Unishippers Global Logistics, LLC v. DHL Express (USA), Inc.*, No. 2:08CV894 DAK, 2009 WL 3459459, at *2 (D. Utah Oct. 27, 2009) (dismissing fraudulent inducement claim because court could not return parties to pre-agreement status). Here, as consideration for its settlement payments, Diversi-Tech obtained a dismissal with prejudice of Cequent's patent infringement lawsuit in New York federal court. The only way to return the parties to their pre-settlement position, therefore, would be to vacate that dismissal and restart the litigation. Because this Court cannot grant that relief, Diversi-Tech's fraudulent inducement claim would be futile under Utah law if it applied.

## C. Diversi-Tech's proposed amendments are futile because the alleged statement it challenges is not actionable as a fraud for at least four reasons.

Diversi-Tech also fails to state a valid and non-futile claim for fraudulent inducement because the alleged statement, if made, would not be actionable. Diversi-Tech seeks to sue on an allegation that, at Paul Budge's 2005 deposition, Cequent's counsel told him that the "invention date for the '686 patent was 'well ahead' of any date Paul Budge could prove for his invention by using the notarized drawings or photographs." (Prop'd Am. Compl. ¶ 21.) According to Diversi-Tech, that alleged statement is false because evidence in the Wyers case shows Cequent's invention date was in 2001, and Budge alleges that he invented in 2000. (*Id.* ¶ 29.) That cannot be an actionable statement, if made, for at least four reasons.

First, the alleged 2005 statement cannot be construed as a representation of fact. At best for plaintiffs, it is merely opposing counsel's opinion about what the evidence would show and how the judge or jury would decide one of the ultimate and disputed issues in the case. Such a statement is not a factual representation and, therefore, cannot be actionable as a fraud. *See Tyger Construction Co. v. United States*, 28 Fed.Cl. 35, 56 (Ct.Cl. 1993) (opinion on ultimate finding of fact is not actionable as fraud); *see also Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 554-55 (Mich. Ct. App. 1992) (opinion is not a representation); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-07 (10th Cir. 2009) (same).

Otherwise, every settlement agreement would be subject to voidance on the allegation that opposing counsel, at some point in the litigation, advocated that his client had a strong case and would prevail. Indeed, to avoid chilling an attorneys' duty to zealously advocate, many courts, including Utah state courts, absolutely immunize advocacy statements by lawyers. *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 34 (Utah 2003) (affirming dismissal of deceit claim based on counsel's alleged statement); *Simms v. Seaman*, 69 A.3d 880 (Conn. 2013) (attorney statements are protected by litigation privilege against claims of fraud). Attorney ethical obligations, disciplinary proceedings, and other mechanisms are more than adequate for deterring and remedying such misconduct. *Simms*, 69 A.3d at 896.

Second, the alleged 2005 statement cannot be construed as false—an essential element of a fraud claim. *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. Ct. App. 1976) (identifying elements of fraudulent inducement claim); *Daines v. Vincent*, 190 P.3d 1269, 1279 (Utah 2008) (same). In opposing summary judgment, Cequent offered evidence precluding Budge from proving an invention date before the May 2002 filing date for the '686 patent. In denying summary judgment to Diversi-Tech in 2007, the New York court agreed with

Cequent (and its attorney) that Budge could not dispositively prove he invented before June 2002 and, therefore, a reasonable jury could decide that Budge could not beat the '686 patent's May 2002 filing date, regardless of Cequent's actual invention date. Therefore, the actual invention date—a date that Diversi-Tech says it has now learned is April 2001—is, in truth, "well ahead of" the invention date that Budge could prove from Cequent's perspective.

Third, Diversi-Tech fails to plausibly allege that Cequent's counsel knew his alleged statement was false or recklessly made. If, as the New York court decided, a reasonable and impartial jury could decide that Budge could not prove an invention date before May 2002, then it would be even *more* reasonable for Cequent's counsel to predict that Budge could not prove an invention date before Cequent's actual invention date—which Diversi-Tech alleges was over a year *before* May 2002. Therefore, it is not plausible to allege that Cequent's attorney believed his prediction was false or that he was reckless about its accuracy.

Fourth, Diversi-Tech fails to plausibly allege it "reasonably" relied on the alleged statement. "[I]t is a 'bedrock principle that a reasonable person represented by a lawyer does not rely on the legal advice given him by an adversary.'" *Arrowood Indemity Co. v. City of Warren, Michigan*, No. 13-13938, 2015 WL 457739, at *3 (E.D. Mich. Feb. 3, 2015), *quoting Atwell v. Lisle Park Dist.*, 286 F.3d 987, 992 (7th Cir. 2002); *accord Austin v. Spirit Airlines, Inc.*, No. 08-60540-CIV-COHN, 2008 WL 4927003, at *2 (S.D. Fla. Nov. 17, 2008) (enforcing settlement and rejecting fraudulent inducement claim because "Plaintiff cannot justifiably rely upon assertions of opposing counsel"). That is especially true here, where: (a) Diversi-Tech had three years in litigation to obtain evidence on Vander Koy's actual invention dates by submitting Rule 34 document requests, obtaining sworn interrogatory answers, or deposing Vander Koy, *see Arrowood*, 2015 WL 457739, at *3 (dismissing fraudulent inducement claim

where it was not reasonable to rely on opposing counsel's statements and plaintiff had means to determine issue himself); (b) Diversi-Tech represented in the Settlement that it was not relying on any statement or representation by Cequent or its counsel as an inducement to settle (Settlement, 5th Whereas Clause); and (c) the alleged statement included the vague and puffery-like phrase "well ahead of" and related Cequent's invention date to the speculative and disputed question of what date "Paul Budge could prove" (Prop'd Am. Compl. ¶ 21).

For any and all of these reasons, Diversi-Tech cannot state a viable claim for fraudulent inducement.

### D. Diversi-Tech's unjust enrichment and declaratory judgment claims are futile for the same reasons as for its fraud claim.

Diversi-Tech's unjust enrichment and declaratory judgment claims rest upon, and are derivative of, its fraudulent inducement claim. So amending its complaint to add those claims is futile for the same reasons as for the fraudulent inducement claim.

### II. If the Court grants leave to amend, it should condition leave on plaintiffs paying the attorneys' fees that Cequent incurred in moving for summary judgment

"Requiring the applicant to pay attorneys' fees, discovery costs, and costs of preparing responsive pleadings rendered moot by the amendment are conditions district courts may impose to mitigate the prejudice caused to the opposing party by the amendment." *Ruschel v. Nestle Holding, Inc.*, 89 F. App'x 518, 520 (6th Cir. 2004); *see also Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 192 F.2d 620, 631 (10th Cir. 1951) ("it lay well within the range of sound judicial discretion of the court to allow the amendment in toto, to deny it altogether, or to permit it with reasonable conditions and limitations").

Cequent wrote to Diversi-Tech's attorney on January 12, 2015, advised that the fraud theory in its complaint was baseless, provided a copy of the filing from the New York action

that confirmed it was baseless, and requested that Diversi-Tech withdraw its complaint. (Letter to J. Park, ECF # 24-10.) Diversi-Tech did not respond to that letter, withdraw its complaint, or move to amend its pleading. After five months without a response from Diversi-Tech, Cequent moved for summary judgment. (ECF # 24.)

By refusing to respond to Cequent's summary judgment motion and now seeking leave to amend, Diversi-Tech concedes that it should have withdrawn its complaint, as Cequent requested in January. To allow Diversi-Tech to now amend its complaint, after forcing Cequent to move for summary judgment, would unfairly prejudice Cequent. Thus, if the Court grants leave to amend, then it should condition that leave on Diversi-Tech reimbursing Cequent for the attorneys' fees incurred in moving for summary judgment on the claims that Diversi-Tech seeks leave to abandon. If the Court so orders, Cequent will provide an affidavit and authenticated billing records of those fees.

## Conclusion

For the foregoing reasons, the Court should deny plaintiffs' motion for leave to file an amended complaint and require plaintiffs to respond to Cequent's motion for summary judgment.

Respectfully submitted,

Dated:  August 20, 2015

   s/ Matthew J. Cavanagh
*Counsel for*
*Cequent Performance Products, Inc.*

Certificate of Service

I hereby certify that, on August 20, 2015, a copy of the foregoing *Cequent's Opposition to Plaintiffs' Motion to Amend Complaint* electronically served using the Court's Electronic Case Filing (ECF) system and the parties have been served by electronic notice through the Court's ECF system.

     s/ Matthew J. Cavanagh
*One of the Attorneys for*
*Cequent Performance Products, Inc.*

{5648411:4}